Hewry, Hewry, Hewry. The United States Court of Appeals for the 11th Circuit is now open according to law. I'll say the United States in its Honorable Court. Good morning. This is Judge Wilson in Tampa. Judge Pryor is in Atlanta. And Judge Corrigan is in Jacksonville. And Judge Pryor and I are delighted to have Judge Corrigan with us today from the Middle District of Florida. Judge Corrigan, we appreciate the assistance that you're giving us on these appeals this week. I'm pleased to be with you. And I would advise counsel that we have three appeals that are scheduled for oral argument this morning. And the court, of course, appreciates all of your cooperation in scheduling these arguments to be heard by telephone conferencing. I will also advise you that we have read the briefs and we've considered relevant parts of the record. If that will assist you in confining your arguments to the issues on appeal. Ms. Geddes is the courtroom deputy. And she will serve as the timekeeper. And she will alert you when your time to argue has expired. And before that, when there are two minutes left to your allotted time. So we are ready to begin with our arguments. And we'll begin with the first one. It is the United States v. Travis Robinson. Farrellene Durrett is here for Robinson. And Carolyn Kane is here for the United States. And, Ms. Durrett, are you ready to begin with your argument? I am, Your Honor. Good morning. Thank you. Good morning, and may it please the court. This is Farrellene Durrett, as the court noted, and I represent appellate Travis Robinson in this case. We're asking the court to vacate Mr. Robinson's conviction and remand the case for a new trial. Today I'd like to touch on two issues. The first is that the trial court erred in not granting mistrial when the government notified jurors that a non-testifying co-defendant had pleaded guilty and was awaiting sentencing. And that's issue two in our brief. And then I'd like to briefly touch on issue seven from our brief, which is that the trial court erred in not granting defense counsel's request for contact information of the named victim, A.G., so they could determine if they would call her as a witness at trial. As to the mistrial issue, as we have known through a series of cases since at least the 1970s, there is no need to advise the jury or its prospective members that someone not in court, not on trial, and not to be tried has pleaded guilty. The prejudice to the remaining parties who are charged with complicity in the acts of the self-confessed guilty participant is obvious, and that comes from Hanson. In United States v. Eason in 1990, this court noted that where evidence of a co-conspirator's conviction is admitted, the risk is that the jury may abdicate its duty. That is, the jury may regard the issue of the remaining defendant's guilt as settled and that the trial is a mere formality. Excuse me, Ms. Durrett, this is Jill Pryor. In this case, the district court gave very timely and rather extensive curative instructions for the mention of the guilty plea. Are you arguing that any time a co-conspirator's guilty plea is mentioned, that there would have to be a mistrial? Well, Your Honor, I think what we know from Fady from 1969 is there are aggravating circumstances when the co-defendant's plea necessarily implicates the defendant on trial, and that's what we have in this case. The government correctly points out in its brief that only two charges involved Mr. Stuckey went to the jury. Those are count one, the conspiracy count, and count five, which was the substantive count, named victim D.A. In the first count, Mr. Robinson and Mr. Stuckey were alleged to have conspired with each other in a wide range of activities related to all of the named victims in this case. And in the second count, they were alleged to have instigated and abetted each other in the acts related to one of the named victims. Notably, in count five, the substantive count, it incorporates all of the acts that Mr. Stuckey and Mr. Robinson were alleged to have committed in furtherance of the conspiracy. So what we have is the jury receiving the instructions, receiving notice from the government that Mr. Stuckey had pleaded guilty in this case and was awaiting sentencing, and then the jury was provided the indictment that showed that there had initially been three co-conspirators. One of them was a testifying co-defendant who did not plead guilty to conspiracy, and the other was Mr. Stuckey who pleaded, and the jury could only conclude that he pleaded to either count one, which involved a conspiracy. This is Judge Corrigan. If I could follow up on Judge Pryor's question. In reading the cases in which this has been held to be error, if I were to say to you that in reading the facts of those cases that the error was more flagrant, it was more egregious, in many cases it was actually the judge, not the lawyer that mentioned the guilty plea or talked about it. I'm just wondering, does this case, are you arguing for per se error here anytime it's mentioned, as Judge Pryor suggested, or are there circumstances where a mention and curative instruction are going to be good enough? Well, Your Honor, I think there's a dispute about that. I'm sure the panel is aware that one of the judges on the panel issued a dissent in Johnston in 2015 and noted that when you have a case where there are aggravating circumstances, that a curative instruction may never be enough to be sufficient to cure the error. And so I do think there's a dispute there, but I'm not asking the court to make a broad ruling that every time this happens there needs to be a reversal, but I think on the facts in this case, there certainly should be. I can tell you that the problem of notifying the jury of the plea agreement was compounded by several facts in this case. First, the defense had obviously no ability to cross-examine Mr. Stuckey about the circumstances or the facts related to his guilty plea. The testifying co-defendant, Ms. Gibbs, did not plead to conspiracy. She was dismissed from the indictment and she pled to obstruction, so the jury was left to determine whether Mr. Robinson committed a conspiracy, and Mr. Stuckey had admitted that he did. Third, Mr. Robinson's defense was that he was a pimp in this case and that the women were willing prostitutes. His defense was that he did not force the women to do anything, but Mr. Stuckey, who admitted guilt, was labeled as the enforcer in the indictment, and that indictment went back to the jury and the jury asked for more copies of the indictment. The indictment lays out numerous acts that he was alleged to have committed as the enforcer of the conspiracy, and the government then capitalized on Mr. Stuckey's status as a co-conspirator in closing. The bulk of the evidence in the case was based on claims by women who were threatened and harassed by the lead detective in the case. As noted in our brief, he stated there are two lists, one that goes to Leavenworth Prison and one that goes home to their kids, and he stated the judge would be notified, if this one helps, she goes home, and if this one doesn't, she goes to prison. So, in short, there were no unbiased witnesses in this case. Everyone came with their own credibility and their own motive to fabricate evidence, so when you look at the evidence in the case, it's not overwhelming the way the government suggests that it is, and I think that that's one of the considerations the court has to give. Further, there was no direct evidence that Mr. Robinson, there was no videotape or other evidence that he was forcing women to prostitute or abusing these women. The government offered pictures and text messages, and at least with victim A.G. who did not testify, the government told them they could infer that Mr. Robinson had hit her to engage in prostitution. Additionally, Madison testified that she was not forced to engage in prostitution. This is Judge Wilson, Counselor. You said there was no direct evidence that Mr. Robinson forced these victims into prostitution. Wasn't there testimony by several of the victims in this case that they were forced into prosecution? Didn't the government principally rely on the testimony of victims at the trial? Your Honor, they testified about the culture of fear, right? So that was the question, and I'll point to Judge Story's statement on the issue of the evidence in the case. The case came up at the Rule 9 argument. He explained that he was having difficulty with some of the evidence in the case, and he said, I'm going to take this under advisement, and with Alyssa, A.G., it's the weakest for me to establish the link. He said there were acts of physical violence. That's not the issue. The issue is whether the physical violence or the coercion or whatever was used to cause the person to engage in commercial sex acts. So even the judge, mid-trial, you know, after the close of the government's case is saying, yeah, it looks like there's some weakness here in the way the government's charging this and trying to prove it. But if you add in the idea that Mr. Stuckey pled guilty to being the enforcer, that he was the person that enforced this and made the girls used to force them to prostitute, it adds weight to the government's case that isn't there when you just look at the testimony of the girls who, again, were threatened by the lead detective in the case, and that all came out at trial. Those were the statements he made when he interviewed them. And, of course, obviously there was a lot of post-trial litigation about whether some victims recanted or whether they were completely truthful, but I think that all goes to this court. Your time has expired. Thank you very much. All right. Counsel, I think you have reserved some time for a rebuttal argument, and we will hear from the government. Ms. Caines? Thank you, Your Honor. May it please the Court, this is Carolyn Caine-Burch on behalf of the United States. I will primarily address my remarks to the issue outlined by Mr. Rett regarding the motion for mistrial related to the statement by the prosecutor and opening statement. The trial court did not abuse its discretion in denying Robinson's mistrial motion after opening statement. I think that the panel hit the nail on the head looking at the way that this argument is coming. The curative instruction here was not only the immediate curative instruction after counsel's statement, but there was an instruction that preceded that by only minutes, that opening statements of counsel are not to be considered by the jury as evidence. So we basically have two instructions. The initial instruction that counsel's statements and openings are not to be considered by the jury as evidence, the immediate curative instruction, and then there was another curative instruction. The next morning before evidence began, the first thing that the jury heard was a curative instruction, again, related to the statement, and they were not to consider the guilty plea of anyone else related to their consideration of Mr. Robinson's guilt. Counsel, this is Judge Wilson, and it's clear from our case law that curative instruction is sufficient to cure any prejudice to the defendant in a circumstance like this, but we say in our precedent that that's sufficient in the absence of aggravated circumstances. Why don't we have aggravated circumstances here? Because Mr. Stuckey was listed in the indictment as the enforcer. The jury was given a copy of the indictment. Did they also request another copy of the indictment with his name listed in the indictment as the enforcer? And there was testimony at the trial that he was the enforcer. And, I mean, isn't that a sufficient aggravating circumstance to potentially prejudice the jury in consideration of Mr. Travis's guilt or innocence? Your Honor, I don't believe it is here. We'll acknowledge, certainly, that Mr. Stuckey was listed in the indictment and that that was something that the jury had a copy of and requested an additional copy of, but the evidence related to Mr. Stuckey at trial was considerably limited given the vast testimony that there was from the various victims at trial. Mr. Stuckey was mentioned related to a couple of incidents involving he and Mr. Robinson, violent incidents involving both of them. And the testimony, as the record will show, Robinson was really the primary aggressor in that. So the notion that... Well, I guess my question is if there's evidence at the trial that Stuckey is Mr. Robinson's enforcer and the jury is told that Mr. Stuckey has pled guilty to being Mr. Robinson's enforcer, then doesn't that prejudice the jury's consideration of Mr. Robinson's case? Your Honor, I don't believe in light of the curative instructions that it does. I think the curative instructions here are sufficient. I don't think the facts here are such that the curative instruction cannot resolve the problem here. I think the reality that the jury did not convict, as to all of the victims on the conspiracy count, is evidence that the jury did what it was told by the trial judge. It followed all of the trial judge's instructions, including the curative instructions, related to the mention of Mr. Stuckey's guilty plea. I think that's good evidence of that. I'll also note that the... Was there evidence at the trial? I mean, I haven't gone through the transcript of the record, but was there testimony that Stuckey was the enforcer? Your Honor, there was testimony that Stuckey was involved. I don't recall. I cannot say that the words were not used. I don't recall necessarily the word enforcer. There was a particular incident in the hotel room where, when one of the victims walked in, Mr. Robinson instructed Stuckey to tackle her or grab her. She testified that Mr. Stuckey did so and that Robinson then joined him in dragging her into the room, and Mr. Robinson then proceeded to choke and beat her. So there certainly was evidence as to Mr. Stuckey's involvement in a couple of the violent incidences, but I don't recall that the word enforcer was necessarily used. And in those incidents, Mr. Robinson, as best I recall from the record, Mr. Robinson was right there with Mr. Stuckey. So those incidents where the jury heard evidence about Mr. Stuckey involved Mr. Robinson as well. So I don't think that on this record that there are aggravating circumstances such that a curative instruction could not be effective here. I think the curative instructions were more than sufficient here. I'll also note that the statement by the prosecutor during opening statements is different than the cases we see where a curative instruction isn't sufficient or where we see a reversal. As Judge Corrigan noted, those are more egregious circumstances typically. The authentic comment by the trial judge rather than by an attorney. Counsel, this is Judge Corrigan. It appeared to me, maybe I'm wrong, but it appeared to me that when the objection was made to the opening statement, it appeared to me that the Assistant United States Attorney was not necessarily aware that it was wrong to do this or certainly didn't act like it was wrong. And then the curative was given. I guess the question is, what did the United States do during the remainder of the trial to make sure that the error that had occurred there would not be prejudicial and would be deemphasized? Yes, Your Honor. I believe the government did carefully work to make sure that there was not any mention by any of the other witnesses as to Stuckey's guilty plea, that that was not something that came up again. It was obviously not mentioned in closing argument. And I think that the evidence related to Mr. Stuckey was limited. His involvement was limited. So I don't know that that was and was not the same as Robinson's. So I don't know that I can say that was necessarily in reaction to making sure, but the government did ensure that there was no further mention of Stuckey's guilty plea. I'm looking at what the district court instructed the jury during the opening statement. The district court instructed the jury to, quote, disregard any statement about what Stuckey may have done with regard to charges that may relate to him. And then the court continued, you are not to consider that in any way. Wouldn't the appropriate instruction be that you're instructed to disregard any statement with regard to charges that might relate to Mr. Robinson? Wouldn't that be the more appropriate instruction? In addition to that instruction, Your Honor, in addition to that instruction, the second curative instruction that the trial court gave, which is in the record at document 271, pages 52 to 53 of the transcript that we will be looking at, the trial judge instructed, you'll recall during the opening statement that Ms. Clark made mention of a co-defendant in the guilty plea. I told you at the time, that's not evidence, and therefore you can't consider that in any way. But even if there were evidence of any other person entering a plea of guilty, that would not be evidence that would be able to be considered regarding this defendant. This defendant is on trial, and you must consider the evidence as relates to this defendant separately and distinctly as it relates to him. And the fact that any other person may have at any other time entered a plea of guilty to whatever charges they may have entered a plea to may not be used to infer in any way that this defendant is guilty of the charges against him in this indictment. That's a totally separate matter and should not be considered at all. Thank you. Okay, I see. So there was a need for a separate instruction the next day because the first curative instruction was inadequate. Is that right? I don't think it was because the first instruction was inadequate. The first instruction I do think was adequate. When the issue was raised again the next morning, the trial judge said that he would give another curative instruction. And I think certainly between the two curative instructions, as well as the initial instruction from the trial judge that statements of counsel are not evidence and should not be considered as evidence, that those are sufficient for the jury to follow that instruction. Again, I think we see, you know, a mixed verdict form that indicates that this jury was able to follow the instructions, including a mixed verdict form with respect to the conspiracy count against Mr. Robinson. So I think that those are the curative instructions were sufficient and were followed. I would also point out that the mention in opening did not say what Mr. Stuckey had pled to. It simply said, after saying the defendant was grooming Ladrigus Stuckey to become a cop, Ladrigus Stuckey has pled guilty in this case as well and he is awaiting sentence. It didn't mention anything about the conspiracy count. It didn't mention anything about Stuckey pleading guilty to being the enforcer. So the very brief mention by counsel, in addition to the curative instructions, was sufficient here. And the trial court, therefore, did not abuse its discretion in denying the motion for mistrial. Unless the panel has other questions, given that that was the only issue raised by Ms. Durrett, I will rest on our briefs. All right, thank you, Ms. Cain. Ms. Durrett, you've reserved some time for rebuttal. Thank you, Your Honor. I'll just start by saying the government focused on what they called the mixed verdict form. And I will note that this court has relied, and Judge Wilson back in the Simpson case in 2016, but many other courts in the circuit have relied on Fleetwood from the Fifth Circuit from 1976. And there the defendant was acquitted on one count and convicted of three other counts. It wasn't a conspiracy case, but evidence of similar bribes came in regarding the testifying witnesses. The witnesses who actually came to court and testified were questioned about their previous pleas, and the defense had opened the door to some of this evidence. And the court still reversed. The court still found that there was error in that case. So even though there had been what the government might call a mixed verdict form, the court still found that the defendant had been prejudiced by that evidence, and it could reverse. And I would ask the court to do that in this case, because I think there is evidence that Mr. Robinson was prejudiced. And I hope the panel has had a chance to look at the indictment, or that it will have a chance to look at the indictment, because the allegations against Mr. Stuckey are extensive in the indictment in the conspiracy count. But then again, as I said, when you look at the other count related to him, count five, count four was dismissed. This is Judge Wilson. There were two curative instructions given after the opening statement. And didn't Robinson's counsel concede that the first curative instruction was an adequate remedy? Well, when he first, Your Honor, when the issue first came up, Mr. Robinson's counsel objected and said, we don't have any case law. But one of his attorneys repeatedly said, this is flat-out reversible error, Your Honor. This is reversible error. And then the court said, okay, well, I'll take that up later. I'll instruct him, and I'll take it up later. And then later, one of his other defense attorneys said, Your Honor, he's done a quick search, and it looks like there are cases where curative instructions can heal this. So then the parties go home. When they come back the next day, the court has done additional research and says, okay, I think I need to give a further curative instruction. And defense counsel says, I know that if I object to that curative instruction, I waived this issue on appeal, so I won't object to you giving it, but I don't think you can unring this bell. I think the damage is done and can maintain his request for a mistrial. So there had been that back and forth. But on the day before the second instruction was given, he again said, I've researched it now, too, and I don't think you can unring this bell based on what's happened here. And the court denied the request for a mistrial. I did want to talk to you. This is Judge Wilson again. If there was an error, could we apply a harmless error review to the issue? Well, Your Honor, I think if not harmless beyond a reasonable doubt, certainly there's a constitutional issue if it denied him the right to a fair trial, and the court would have to find that it was error beyond a reasonable doubt, and I don't think you can show that here. This is Judge Wilson again. If we subtract the Stuckey comments and evidence, are you able to convince me that there's not overwhelming evidence of Mr. Robinson's guilt in this record? Your Honor, well, I have a couple of things to say, and I hate to quote the court back to itself, but I know you are aware of your decision from Johnston in 2015 where you said the existence of a curative instruction and the strength of the government's case do not render the error harmless when aggravated circumstances exist. And, again, based on that Beatty case back from 1969, which is still good law, aggravated circumstances exist when the information about the co-defendant's plea necessarily implicates the defendant who's on trial, and that's what we have here. And so I don't think you can say that this error was harmless beyond a reasonable doubt. Did I really write that? You did, Your Honor. Okay, okay. Go ahead, go ahead. Just looking at closing, the closing argument, so when the government got up to talk about Mr. Stuckey in closing, his nickname is Dreek, and the government said, you heard about the Dreek of Stuckey, also known as Dreek, who was also with him on the trip, but in one instance he was much more than just a chaperone. Dominique told you that in a hotel room in Chicago, after she tried to escape, he came back to the room for her belongings, and who was in that room? The defendant and Dreek. And what did the defendant say to Dreek? Dreek, get her. And what did Dreek do? He tackled her. Dreek was not just a chaperone. Dreek was a co-conspirator. He was around. He knew the actions. Together with this defendant would cause Dominique to engage in commercial sex acts, and that force would be impacted for that reason on her, and that goes to count five where Mr. Robinson is alleged to have aided and abetted Mr. Stuckey, or he aided and abetted Mr. Robinson, and then we heard testimony in court from victim LW and victim CA about instances of violence where Mr. Stuckey and Mr. Robinson were together, and Mr. Robinson allegedly instructed Mr. Stuckey. Now, both of those victims, notably, are the victims that we allege there were questionable issues with at trial. One of them was very unmoored from the realities of the trial at certain points, and the defense asked for her to be declared incompetent, and the other victim later recanted her statements in a letter to the defense and was the subject of that three-day post-trial hearing about whether she provided false testimony in court. So we couldn't cross-examine Mr. Dreek about his plea, and then the two witnesses who provided information about him being the enforcer, we were really unable to be sure that their testimony was credible in this case. And so I will note that there are other cases. Obviously, the court knows that there are other cases. Thank you, Your Honors. We would ask that the court reverse this case and remand for a new trial. Thank you, Ms. Durrett and Ms. Cain.